WILL, Senior District Judge.
 

 Debtors Jakov and Olean Bulic filed for bankruptcy, and Jakov’s brother, Ivan Bulic, filed adversary proceedings against them. They counterclaimed. Both the bankruptcy and the adversary proceedings were dismissed by the bankruptcy court, and the debtors’ appeal to the district court also was dismissed. This appeal followed.
 

 I.
 
 Procedural background
 

 We will not attempt to set forth all the facts that underlie this case. Although the parties have spent much time and effort trying to smear one another with factual allegations, they are irrelevant to this case. Discussions of who worked hard and who was lazy, who drank and who was sober, who became a United States citizen and who did not, have no place in this bankruptcy appeal. What is relevant is the procedural background of this family feud.
 

 Ivan Bulic filed suit in Indiana state court against his brother Jakov, and his sister-in-law, Olean Bulic. He claimed that he had loaned them money and that they also owed him money for work he had performed for them at a small motel which they owned. They counterclaimed, contending that he owed them money for room and board. A verdict was entered in favor of Ivan Bulic for over one hundred thousand dollars in his state court action. Ivan Bulic then filed a lien against the Bulies’ motel.
 

 On August 1, 1989 Jakov and Olean Bulic filed for bankruptcy under Chapter 11 of the Bankruptcy Act. Ivan Bulic filed an adversary proceeding claiming that the debt to him was nondischargeable. Jakov and Olean counterclaimed arguing that the lien was avoidable.
 

 On June 28, 1991, almost two years later, the United States Trustee moved for dismissal of-the case, or conversion from Chapter 11 to Chapter 7. The U.S. Trustee stated that there had been a failure to file current financial statements, proof of insurance, and proof of tax payments, and also that there was no possibility of a confirmable plan. This motion was subsequently joined by Ivan Bulic.
 

 At a hearing on September 18,1991, Bankruptcy Judge Ihlenfeldt found that Jakov and Olean were current on their financial statements and other requirements, but that there was no possibility of a confirmable plan. Specifically, his minutes (R. 59) reflect findings that: 1) the debtors failed to propose a plan that could be confirmed; 2) their third amended disclosure statement did not meet the criteria of § 1125(a), the information on funding would not enable a creditor to make an informed judgment, although the information suggested that the plan was not feasible; 8) absent the agreement of Ivan (who held the vast majority of the unsecured debt) it would be impossible for the debtors to propose a confirmable plan; and 4) the case was two years old and further delay would be prejudicial to the creditors, particularly since the bankruptcy was filed as a litigating tactic rather than as a good faith effort to reorganize the debtors’ business.
 

 Two brief written orders were issued on September 27, 1991, one dismissing the Chapter 11 case (“good cause having been shown”), and the other dismissing Ivan’s adversary proceeding, rendered moot by dismissal of the Chapter 11 case. (R. 61 and 63) The debtors filed motions to reconsider, for a new trial, and for a stay. Bankruptcy Judge Ihlenfeldt denied all of these motions in an order signed on November 4, 1991, but not entered on the docket until November 8, 1991.
 

 
 *301
 
 The debtors filed a notice of appeal with the clerk of the Bankruptcy Court on November 18, 1991, stating that they appealed from “the final order of the bankruptcy court dismissing their case and their counterclaims in the adversary proceeding referenced above.” When they listed the parties to the order appealed from, which is required by Bankruptcy Rule 8001(a), they listed Jakov and Olean Bulic and Ivan Bulic. They did not name the U.S. Trustee, although it was the Trustee who had made the motion for dismissal from which the debtors wished to appeal. The debtors did not file a statement of issues on appeal or their designation of the items to be included in the record on appeal until sixteen calendar days after their notice of appeal.
 

 Ivan Bulic moved the district court to dismiss the case because of two procedural defects. The debtors had not included the U.S. Trustee as one of the parties as required by Bankruptcy Rule 8001(a), and they had failed to file a statement of issues on appeal or designate items for the record within ten days of filing their notice of appeal, as required by Bankruptcy Rule 8006. Judge Tinder granted the motion to dismiss the appeal on January 7, 1992 and denied the appellants’ motion for rehearing on January 30, 1992. Judge Tinder held that the procedural defects did not deny him jurisdiction, but gave him discretion to dismiss the appeal. He held that this was a proper case in which to exercise his discretion because the bankruptcy had only been filed as a litigation tactic to delay enforcement of the state court judgment, and he would have affirmed the bankruptcy court even if he had reached the merits. This appeal followed.
 

 II.
 
 The failure to designate within 10 days
 

 Bankruptcy Rule 8006 requires that within ten days of filing a notice of appeal, “the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented.” In this case, the appellants did not do so until sixteen calendar days had passed. The appellants explained that they had been following the old version of Rule 9006, which specified that weekends and holidays were not counted towards a ten day time period. However, that rule was amended in 1989 so that weekends and holidays did count unless the time period was of eight days or less. Thus, the rules, as they existed in 1991, were not complied with.
 

 Courts have dealt with late or missing designations in three ways. In the largest group of cases,
 
 [1]
 
 the courts have simply evaluated the situation and then either dismissed the appeal or not, without reference to any bankruptcy rule. See
 
 In re Winner Corp.,
 
 632 F.2d 658 (6th Cir.1980);
 
 In re Comer,
 
 716 F.2d 168, 177 (3d Cir.1983);
 
 In re Champion,
 
 895 F.2d 490 (8th Cir.1990);
 
 In re Soter,
 
 31 B.R. 986 (D.Vt.1983);
 
 In re Bienert,
 
 48 B.R. 326 (D.C.Iowa 1985);
 
 In re Wilson,
 
 53 B.R. 123 (D.Mont.1985);
 
 In re Bernat,
 
 57 B.R. 1009 (E.D.Pa.1986);
 
 In re France,
 
 63 B.R. 775 (D.N.H.1986);
 
 In re Smith,
 
 119 B.R. 558 (S.D.Ohio 1989);
 
 In re Suncoast Airlines,
 
 121 B.R. 403 (S.D.Fla.1990). These courts, when they have discussed any standards at all, have looked for bad faith by the late filer or prejudice to the other parties.
 

 Another sizable group has ruled on dismissal for delayed or missing designations under the authority of Bankruptcy Rule 8001(a).
 
 [2]
 
 This rule gives the district court authority to take any appropriate steps, including dismissal of the appeal, in response to non-jurisdictional procedural lapses. This was the rule relied upon by the district court in this case and also in:
 
 In re Serra Builders, Inc.,
 
 970 F.2d 1309 (4th Cir.1992);
 
 In re Fitzsimmons,
 
 920 F.2d 1468 (9th Cir.1990);
 
 Sierra Switchboard Co. v. Westinghouse Electric Corp.,
 
 789 F.2d 705 (9th Cir.1986);
 
 Greco v. Stubenberg,
 
 859 F.2d 1401 (9th Cir.
 
 *302
 
 1988);
 
 In re Thompson,
 
 140 B.R. 979 (N.D.Ill.1992);
 
 Adler v. Bancplus Mortgage Corp.,
 
 108 B.R. 435 (S.D.N.Y.1989);
 
 In re Webster,
 
 47 B.R. 1012 (M.D.N.C.1985);
 
 West v. Falconer,
 
 17 B.R. 929 (S.D.Ill.1982). Under Rule 8001(a), courts clearly have broad discretion, but where they have discussed specific factors they have included egregiousness, prejudice, or bad faith in their decisions on dismissal.
 

 Finally, some courts have applied Bankruptcy Rule 9006(b) to this type of case. Rule 9006(b) states that time limits may be enlarged, but that when the time has run before a party requests an extension of time, the party must show that “the failure to act was the result of excusable neglect.” The eases which have applied the Rule 9006(b) standard include those in which the party had requested an extension of time,
 
 In re Dowell,
 
 95 B.R. 693 (Bkrtcy.W.D.Mo.1989);
 
 In re Colombian Coffee,
 
 71 B.R. 258 (Bankr.S.D.Fla.1987), as well as those in which no such request had been made,
 
 In re Duncan,
 
 95 B.R. 672 (Bkrtcy.W.D.Mo.1988) (application of both Rule 8001(a) and Rule 9006(b) discussed);
 
 In re Bock Laundry Machine Co.,
 
 63 B.R. 221 (N.D.Ohio 1986) (same).
 

 Clearly there is not a consensus under what rubric district courts should decide these eases, whether it be Rule 8001(a), Rule 9006(b), or the courts’ inherent authority. This may make a difference because Rule 9006(b) provides more specific standards, and therefore limits a judge’s discretion more than Rule 8001(a). In some cases a party may benefit from the greater discretion under Rule 8001(a) (as most of the cases invoking that rule have permitted the delay in filing without sanctioning the party), while in other eases a party might be worse off because actions which may fall within the definition of “excusable neglect” may nonetheless justify an exercise of discretion under Rule 8001(a) that dismisses the case.
 

 In
 
 Sierra Switchboard,
 
 the majority cited both rules, but in affirming the district court’s decision to allow the delay, they did not apply the excusable neglect standard of Rule 9006(b) at all. This led Judge Skopil to file a special concurrence addressing this specific question. He argued that Rule 9006(b) applied, since it speaks directly to the specific situation of an extension of time, rather than the more general Rule 8001(a).
 
 Sierra Switchboard,
 
 789 F.2d at 710. Certainly, a failure to request an extension should not mean that the party has a greater chance of being permitted a delay than if a formal Rule 9006(b) motion had been filed and the “excusable neglect” standard applied.
 

 It is unnecessary, however, to decide the question of which standard should apply, because under any standard, the district court decision should be affirmed.
 
 [3]
 

 The Supreme Court has recently elaborated on the standard for “excusable neglect” in
 
 Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,
 
 — U.S. —, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court held that “neglect” includes omissions through carelessness and mistake. In considering what is “excusable,” courts are directed to examine all relevant circumstances, including:
 

 [T]he danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the mov-ant, and whether the movant acted in good faith.
 

 Pioneer,
 
 at —, 113 S.Ct. at 1500. The Court also held that it did not matter that the fault was caused by the attorney and not the party, because clients are accountable for the acts and omissions of their attorney.
 

 While the district court could not have applied this recently announced standard, it discussed similar factors in making its decision to dismiss under Rule 8001(a), and from its findings it is clear that the dismissal was not an abuse of discretion. Although there was little danger of prejudice
 
 *303
 
 to the appellee from this rather short delay,
 
 [4]
 
 other factors weigh against a finding of excusable neglect. The reason for the delay was failure of counsel to read or follow the current rules; this was clearly within the control of the movant. More significantly, however, the bankruptcy judge and the district court both found that appellants “have delayed this matter in bad faith.” We have been given no reason to set aside this finding of fact. Bad faith is sufficient reason to find that the appellants’ neglect was not excusable.
 

 Under the other standards that have been applied in cases of delay, which have in common the factor of bad faith, it was also within the district court’s discretion to dismiss the appeal. Given the other procedural defects in the case, the court’s finding that if it reached the merits it would affirm (as would we, see below), and the unanimous conclusion of the bankruptcy judge, the district court and this panel that this case was filed not as a good faith bankruptcy, but as a litigation tactic in a family feud, it was not an abuse of discretion to dismiss the appeal for failure to timely designate.
 

 III.
 
 The merits
 

 We have held that the district court properly dismissed this appeal on procedural grounds. However, Judge Tinder also noted that if he were to reach the merits of the appeal, he would still affirm the decision to dismiss the bankruptcy. In fact, he suggested that, if this case were more meritorious, he might not have exercised his discretion in dismissing the appeal as he did. Lest the debtors think that procedural errors have denied them a victory they might otherwise have had, we will briefly review the merits.
 

 In deciding to dismiss the Chapter 11 proceedings, the bankruptcy judge made three alternate calculations: Ivan as fully secured, Ivan as partly secured, and Ivan as unsecured. He determined, correctly, that no matter what the outcome was of the debtors’ attempt to void his lien, Ivan Bulic, as by far the largest creditor, would still be in a position to block the adoption of any reorganization plan. Thus, it was unnecessary to resolve the dispute over whether the lien was a voidable preference in order to dismiss the Chapter 11 proceedings. Furthermore, once the Chapter 11 proceedings were dismissed, the debtors’ bankruptcy counterclaims for voiding preference were rendered moot.
 

 The debtors’ non-bankruptcy based counterclaims for fraud, deceit and perjury were all predicated on the argument that the state court decision in favor of Ivan Bulic was wrong. Collateral estoppel applies in bankruptcy proceedings to prevent the re-litigation of issues, just as it does in other cases.
 
 Grogan v. Garner,
 
 498 U.S. 279, n. 11, 111 S.Ct. 654, n. 11, 112 L.Ed.2d 755 (1991) (“Our prior cases have suggested, but have not formally held, that the principles of collateral estoppel apply in bankruptcy proceedings under the current Bankruptcy Code.... We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).”);
 
 Klingman v. Levinson,
 
 831 F.2d 1292 (7th Cir.1987).
 
 [5]
 
 The issues raised in the Bulics’ counterclaims are the same as the issues actually litigated
 
 *304
 
 and decided in the state court action, between these same parties, and thus collateral estoppel prevents their re-examination.
 

 The debtors claim, however, that the bankruptcy court’s analysis of the Chapter 11 proceedings all assumed that Ivan Bulic did have a substantial claim against them, whether it was secured or unsecured. The debtors argue that this assumption, based on the fact that Ivan has a judgment from an Indiana state court, cannot be made, but that the issue of the validity and amount of Ivan’s claim must be re-examined by the bankruptcy court. They have said that this is part of the bankruptcy court’s general equitable powers, but have not specified what provision of the bankruptcy code gives the court authority to ignore or set aside a valid state court judgment. A resort to general equitable principles, independent of the code, is insufficient. See
 
 Norwest Bank Worthington v. Ahlers,
 
 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988).
 

 Even if the bankruptcy court’s equitable powers are great, there are limits to that authority. One of them is 28 U.S.C. § 1738, the statutory clause requiring that state court judgments be given full faith and credit in federal courts as they would in the state that issued them. See
 
 In re Laing,
 
 945 F.2d 354, 358 (10th Cir.1991);
 
 Bicknell v. Stanley,
 
 118 B.R. 652 (S.D.Ind.1990). Thus, the bankruptcy court was required to find that the Bulics owed Ivan Bulic the amount entered in the state court judgment, since Indiana courts would find that judgment pre-clusive.
 
 [6]
 

 There are a few exceptions to the application of preclusion principles. They were discussed in a similar ease under the old Bankruptcy Act, under the rubric of res judicata, in
 
 Heiser v. Woodruff,
 
 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946). A creditor obtained a default judgment against the debtor in a federal district court, and the debtor appeared only to contest the amount of damages. After the debtor entered bankruptcy, the bankruptcy trustee moved the district court to set this judgment aside, alleging fraud upon the court. The motion was denied. The debtor then tried to relitigate the existence of the debt in bankruptcy court. The Supreme Court held that this was barred by res judicata, at least to the extent that the issues were actually litigated in the two previous cases. The Court stated that:
 

 Undoubtedly, since the Bankruptcy Act authorizes a proof of claim based on a judgment, such a proof may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party. But it is quite another matter to say that the bankruptcy court may reexamine the issues determined by the judgment itself.
 

 Heiser,
 
 327 U.S. at 736, 66 S.Ct. at 857 (citations omitted); see also
 
 Browning v. Navarro,
 
 826 F.2d 335 (5th Cir.1987).
 
 [7]
 
 There
 
 *305
 
 has been no allegation that there was a lack of state court jurisdiction in Ivan Bulie’s state case, and the only allegations of fraud were not of fraud upon the court, but of perjury at trial and coercion in obtaining the promissory notes. Thus the only issues of fraud that the Bulics raised were fully litigated and decided by the state court judgment. The debtor in
 
 Heiser
 
 was only entitled to relitigate the judgment because it was a default judgment and because the debtor alleged that the judgment creditor had committed a fraud upon the court. Neither of these circumstances is here present.
 

 More recently, in
 
 Laing, supra,
 
 the court held that a state court judgment must be given full faith and credit as proof that a debt existed. The bankruptcy court could not reexamine either the existence or the amount of the debt unless the debtor could attack the judgment as being obtained by extrinsic fraud. The same rule applies here.
 

 The Bulics had full opportunity to appeal the state court judgment. They chose not to do so but filed these bankruptcy proceedings. They may not use the bankruptcy system to continue to litigate what has been finally ruled upon. They may not further use the courts to carry on their family feud. The judgment of the district court is affirmed.
 

 [1]
 

 . These and other cases discussed below include some cases in which a designation was made, but the transcripts were not actually obtained, and cases in which parties also failed to file briefs.
 

 [2]
 

 . "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal.” Bankr.Rule 8001(a), in part.
 

 [3]
 

 . While there is a difference in the standards that a district court could apply to this case, no matter what the proper standard was in the district court, we review the district court’s application of that standard for abuse of discretion.
 
 Greco, supra,
 
 and
 
 Sierra Switchboard, supra.
 

 [4]
 

 . Arguably the delay caused by the Bulics was more than the few days it took them to file their designation. In
 
 Fitzsimmons, supra,
 
 the court found that the consequence of the few weeks delay in designating and the subsequent delays in obtaining transcripts was not the only part of the delay. The court included the time it took the district court to consider dismissing the appeal, and the further delay caused by the appeal to the Ninth Circuit, in concluding that there had been a lengthy delay which could be particularly prejudicial to creditors in bankruptcy cases.
 

 In addition, other courts have dismissed cases with similar short delays. See
 
 Colombian Coffee, supra,
 
 an eight day delay, and
 
 Dowell, supra,
 
 a ten day delay.
 

 [5]
 

 . The debtors rely on
 
 In re Bundles,
 
 856 F.2d 815 (7th Cir.1988) for their claim that-collateral es-toppel and res judicata have no application to a bankruptcy proceeding.
 
 Bundles
 
 makes no such statement, never mentions collateral estoppel or res judicata in any connection, and in fact, held only that a regularly conducted, non-collusive foreclosure sale did not give rise to an irrebutta-ble presumption of equivalent value. A foreclosure sale is not a trial; there are no issues that are ruled on or findings of fact that are made. Even if
 
 Bundles
 
 had made such a statement, the later Supreme Court case,
 
 Grogan,
 
 498 U.S. 279,
 
 *304
 
 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) would be controlling.
 

 [6]
 

 . Since the statute calls for giving judgments the full faith and credit that the state that issued them would, we look to Indiana rather than federal law,
 
 Marrese v. American Academy of Orthopaedic Surgeons,
 
 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985),
 
 Bicknell,
 
 118 B.R. at 659, although there is not always much difference. (In
 
 Bicknell
 
 there was a key difference in how Indiana dealt with consent judgments.) Indiana law on issue preclusion was summarized in
 
 Bicknell:
 

 The general rule of issue preclusion in most jurisdictions is accurately reflected in the Restatement (Second) of Judgments, as follows:
 

 When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. Restatement (Second) of Judgments § 27 (1982). A review of Indiana case law shows that this general rule is followed by the Indiana courts as well.
 

 Bicknell,
 
 118 B.R. at 664 (citing
 
 Hardesty v. Bolerjack,
 
 441 N.E.2d 243, 245 (Ind.App.1982)). All of these conditions were met in this case, as the district court noted.
 

 [7]
 

 . Although the Court has held that it will not apply res judicata to bankruptcy cases because it is much broader than collateral estoppel (see
 
 Brown v. Felsen,
 
 442 U.S. 127, 138-39, 99 S.Ct. 2205, 2212-13, 60 L.Ed.2d 767 (1979)), the exceptions for fraud or lack of jurisdiction that
 
 Heiser
 
 discusses in the res judicata context are equally applicable to the narrower doctrine of collateral estoppel that the Supreme Court has held does apply to bankruptcy cases.